Albert Tibbetts, appellant, *vs.* Jeremiah Job, *et al.*, appellees.

*Appeal from Madison.*

If a party rebuts the presumption arising from the Auditor's deed, that land sold for taxes has been duly listed, the party claiming under such deed must prove, affirmatively, that the revenue laws in relation to the listing of land for taxation have been complied with.
A listing of lands in one class did not authorize the Auditor to charge the land with taxes in a different class. The classification of the land was the basis of the right to charge and collect the taxes, and that must be strictly pursued.

This was an action of ejectment, brought in the Madison Circuit Court, to recover the south fractional half section thirty-three, in township five north, range nine west, of said county.

The cause was heard before Underwood, Judge, and a jury, at August term, 1849, of said Court. The jury found for the defendants, a motion for a new trial was denied, and the plaintiff below brings the cause to this Court, upon the following agreed state of facts :

Plaintiff, to sustain his case, introduced a deed from the Auditor to John Dement, of date January 24, 1835, reciting the sale of said land for the sum of three dollars and fifty-one cents, the amount of tax for the year 1832, with interest and costs. It was admitted by defendants, that plaintiff connected himself with Dement's title for eleven-thirteenths of said land, except-

ing forty acres to be taken off the east side of said land, which plaintiff did not claim. Defendants admitted possession, claiming title to the whole of the land at the time of suit brought.

The defendants then offered in evidence the deposition of Thomas H. Campbell, contained in the record of this case when before the Supreme Court at its December term, 1848, together with the diagrams from the Auditor's office, thereto attached; to the admission of which in evidence to the jury the plaintiff objected. Objection overruled, and deposition read. The plaintiff at the time excepted to the decision of the Court. It was agreed by the parties that the depositions contained in the record, heretofore before the Supreme Court, might be referred to, and taken as part of this record.

*Deposition of Thomas H. Campbell.*—I am Auditor of Public Accounts—have held the office since March, 1846—was clerk in said office from February, 1843, to March, 1846. The land in controversy was entered in the book containing a list of the district lands subject to taxation from the year 1828 to 1834, as appears from the diagram marked A, and taxed as is therein represented. Diagram A is correctly copied from the tax book in my office, and contains every thing in said book relating to said land. There is no heading to any of the columns of said book, except for the year's tax, as is shown in the diagram. The first entry in the diagram is copied from, and is the first entry on page 177, of said book. This land is not listed in any other book for taxation from the year 1828 to 1834. It no where appears in said book that said land was classed or listed as first, second or third rate, unless the figure (1,) in the ninth column of the diagram marked A, checked with red ink, denotes the rate or class.

*Cross Examination.*—The figures 204, immediately succeeding the figure (1,) in the ninth column of diagram A, refer to page 204 of Non-resident Land Book C, as will more fully appear by diagram marked B. Diagram B is a correct copy from book C, page 204, so far as relates to the tracts of land therein described. The headings to the columns, as represented by diagram B, are the same as in book C, except that in said book the name of land district is written at the head of some of the pages. The letter A, and the figures 7 and 108, in the tenth column of diagram B, refer—the letter A to Non-

resident Land Book A, figure 7, of said book, and figure 108 refers to page 108, of said book—as will more fully appear by reference to diagram marked C ; the same being a correct transcript from said pages of said book, so far as relates to the lands described in the diagram. The books from which the diagrams A, B and C are made are the books in which non-resident lands were listed by the Auditor. Figure (1,) in the ninth column of the diagrams marked A and B, in my opinion denotes the rate or class in which the land was listed for taxation. The original lists, with the affidavits accompanying them, furnished by non-residents previous to the year 1833, are not among the files of my office. Think that for the tax of 1832 this land was not taxed in the first class, on account of the amount of tax charged.

Tibbetts *vs.* Job *et al.*

DIA

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1814, Sept. 20 | Names omitted. | – | Pat. | N E 25 | 5 N | 9 W | 160 | $2 06 |
| "   " | | – | " | N W 25 | 5 N | 9 W | 160 | 2 06 |
| "   " | | – | " | N E 26 | 5 N | 9 W | 160 | 2 06 |
| 1817, Mar. 17 | | | " | E ½ N W 26 | 5 N | 9 W | 80 | 57 |
| 1816, April 29 | | Relinquished. | 80 | S W 26 | 5 N | 9 W | 160 | 30 |
| "   " | | Relinquished. | 80 | S E 26 | 5 N | 9 W | 160 | 30 |
| "   " | | Relinquished. | 80 | S E 27 | 5 N | 9 W | 160 | 30 |
| 1817, April 17 | | – | Pat. | W ½ N E 28 | 5 N | 9 W | 160 | 2, 81 |
| 1814, Aug. 19 | – | – | " | N W 28 | 5 N | 9 W | 160 | 2 02 |
| "   Sept. 12 | – | – | " | S W 28 | 5 N | 9 W | 160 | 2, 2 04 |
| "   " | – | – | " | S E 28 | 5 N | 9 W | – | 2 04 |
| "   Aug. 19 | – | – | " | S W 29 | 5 N | 9 W ⎱ | – | 2 02 |
| "   " | – | – | " | S E 29 | 5 N | 9 W ⎰ | 221.12 | 3, 2 02 |
| | | | | See | 180 | | | |
| "   " | – | – | " | Fr. sec. 32 | 5 N | 9 W | 34.4 | 2, 2 02 |
| "   Sept. 12 | – | – | " | N E 33 | 5 N | 9 W | 160 | 2, 2 04 |
| "   " | – | – | " | N W 33 | 5 N | 9 W | 100 | 2, 2 04 |
| "   " | – | Scott & Rule, | " | S fr'l ½ 33 | 5 N | 9 W | 218.72 | 1, 2 04 |
| | | Wm. Norris, | " | S W 34 | 5 N | 9 W | 160 | 3, 86 |

I, THOMAS H. CAMPBELL, Auditor of Public Accounts of the state of Illinois, do here taining a list of the district lands subject to taxation for the taxes of the years 1828 to 1834, page 177 of said book—the other lands described in said record or book being omitted—and

[SEAL.]       In testimony whereof, I have hereunto subscribed my name, and

DIA

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1814, Sept. 10 | Names omitted. | D 121 | N E 9 | 1 N | 6 W | 160 | – | – |
| "   " | | D 177, 81 | S E & S W frs. 33 | 5 N | 9 W | 218 | 72 | 1 |
| "   13 | | D 168 & 169 | S W 13 S E 14 & N E 23 | 4 N | 8 W | 482 | – | – |

I, THOMAS H. CAMPBELL, Auditor of Public Accounts of the state of Illinois, do here resident land book marked C., so far as the records in said book relate to the lands therein headings, ruling, figures, notes, &c., are correctly copied from the book aforesaid.

[SEAL.]       In testimony whereof, I have hereunto subscribed my name, and

Tibbetts *vs.* Job *et al.*

## GRAM A.

177

| 1828. | 1829. | 1830. | 1831. | 1832. | 1833. | 1834. | |
|---|---|---|---|---|---|---|---|
| – | Madison | Madison | Madison | Madison | Madison | – | E 198 |
| – | do | do | do | do | do | – | E 198 |
| – | do | do | do | Madison | do | – | E 198 |
| – | do | do | do | Madison | do | – | E 198 |
| – | do | | | | | | |
| – | do | | | | | | |
| – | do | | | | | | |
| 1 32 | Greene | Greene | Greene | 1 30 | Madison | – | E 198 |
| 1 60 | 1 60 | 1 60 | 2 40 | 2 40 | 2 40 | – | E 198 |
| 2 55 | St. Clair | St. Clair | St. Clair | St. Clair | St. Clair | – | E 198 |
| – | 80 Madison | 80 Madison | 80 Madison | 80 Madison | Madison | – | E 198 |
| – | – | – | – | – | – | – | E 198 |
| 2 36 | 128 Madison | St. Clair | St. Clair | St. Clair | St. Clair | – | E 198 |
| | St. Clair | | | | | | |
| 62 | Madison | do | do | do | do | – | E 198 |
| | St. Clair | | | | | | |
| 2 55 | St. Clair | St. Clair | do | do | do | – | E 198 |
| 1 62 | do | do | do | do | do | – | E 198 |
| 4 36 | 4 36 | 4 36 | 4 36 | 3 51 | 3 27 | – | E 198 |
| 1 73 | 1 60 | St. Clair | St. Clair | 2 40 | – | – | E 198 |

AUDITOR'S OFFICE, ILLINOIS,
*Springfield, June* 27, 1848.

by certify that the above and foregoing is a true copy or diagram of the book or record, con-
inclusive, so far as relates to the lands therein described, including the first eighteen tracts on
that the headings, ruling, figures, &c., are correctly copied from the book aforesaid.
affixed the seal of my said office, the day and year above written.
THOMAS H. CAMPBELL, *Auditor P. A.*

## GRAM B.

204

| | Back taxes &c. 1820. | 1821. | 1822. | 1823. | | | 1826, 1827. |
|---|---|---|---|---|---|---|---|
| – | – | – | – | – | – | – | 25 St. Clair |
| A 7, 108 | '18 '19 pd & '20 pd | 4 38 | 4 38 | ad. 4 92 R. | 4 38 | 4 38 | 4 38, 4 36 |
| – | – | – | – | – | – | – | 26, 25 Mad. |

AUDITOR'S OFFICE, ILLINOIS,
*Spring field, June* 27, 1848.

by certify that the above and foregoing is a true and correct copy or diagram of the non-
described—the other lands described in said book being omitted in said diagram—and that the

affixed the seal of my said office, the day and year above written.
THOMAS H. CAMPBELL, *Auditor P. A.*

*Tibbetts vs. Job et al.*

## DIAGRAM C.

| Date of list. | Proprietors. | LAND. 1st. | LAND. 2d. | Water course. | Original claimant. | In whose name confirmed. | In whose name purchased of U. S. | No. of section, half sec. qr. sec. or fract'n. | No. of town | No. of range | Tax due. | Tax paid 1818. | Tax paid 1819. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1817 Nov. 20 | R. Easton | 3d 160 58.72 | 314.38 — — | Peason's creek Mississippi bottom do (Fort Chartres do) | — — (Deneger's claim.) | — — (Deneger) | Wm. Russell D. Stockton do John Densey | N E ¼ S W fr ¼ 11 S E ¼ ¼ 33 S W fr'l ¼ 33 pt N W N E & S W fr ¼ ½ & S E fr 3 | 5 N 5 N 5 N | 10W 9 W 9 W | $2 35 1 60 59 | $2 35 1 60 59 | |
| | same | 131 | — | do | do | 1613 do | — | — | — | — | 1 31 | 1 31 | |

The lands owned by Rufus Easton will be found entered on page 108 as per list given for the year 1819.

108

(PAGE 108, SAME BOOK.)

108

| | Quantity & Rates. 1st. | 2d. | 3d. | County. | Water course. | Original claimant. | 1818. Am't of tax pd. for year. | 1819. | 1820. | 1821. | 1822. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| R. Easton | — | — | 314.28 | Madison | Fountain creek | Wm. Russell N E ¼ ¼ W fr. ¼ sec. 11 5 N 10W | $0 00 | — | — | — | A. Gamble W fr. 11, A 16¼ |
| " | 160 | — | — | " | Missi. Bottom. | Dav. Stockton S E ¼ ¼ 33 5 N 9 W | — | — | $3 66 int. $3 20 | 3 20 owned by Scott & Rule |
| " | 58.72 | — | — | " | " | " S W fr'l ¼ 33 5 N 9 W | — | $88 25 | 1 32 1 18 | 1 18 owned by Scott & Rule |
| " | 131 | — | — | Rand'ph " | — " | Mr. Denegan (claim 1612) | — | | | | |

AUDITOR'S OFFICE, ILLINOIS,
Springfield, June 27, 1848.

I, Thomas H. Campbell, Auditor of Public Accounts of the state of Illinois, do hereby certify that the above and foregoing are true and correct copies of

pages seven (7) and one hundred and eight (108) of non-resident land book marked A, so far as the records in said books relate to the lands therein described—the other lands described in said book being omitted in the said diagram—and that the headings, ruling, figures, notes, &c., are correctly copied from the books aforesaid. The note in the margin, on page 7, refers to all the lands included in the bracket, part of which is omitted in the diagram.

In testimony whereof, I have hereunto subscribed my name, and af-
[SEAL.]  fixed the seal of my said office, the day and year above written.

THO. H. CAMPBELL, *Auditor P. A.*

Levi Davis, on the part of plaintiff, testified, that he was Auditor of Public Accounts from 1835 to 1841 ; that there are numerous land books in Auditor's office ; when one book is filled up, another is opened. Heading and classification not usually carried forward into the new books—only the description of the lands, the name of the patentee, and present owner when known; thinks the figures 1st, 2d and 3d, on the diagrams, indicate the class. After the year 1830, or 1831, thinks all lands were charged with taxes as if in second class ; and rated by the Auditor as of that class, by charging an amount of tax that would make the land belong to that class, although no figures or marks were used to denote the class, except the amount of tax. As appears from the diagram and witness' best recollection, and from the amount charged against this tract of land for the year 1832, has no doubt it was charged as of the second class ; and the interest and costs added to make up the amount of $3 51. Thinks that the figures $3 51 were not inserted in the book from which the diagram was taken till after the sale, when the amount of taxes, with interest and costs, was put down. Thinks it was not customary, before he was Auditor, to put down in said book the amount of taxes due on any land, except as they were paid ; and all lands on which taxes were not paid were copied into a separate book before sale, and the amount of taxes, interest and costs then was charged in said book, opposite said tract, and sold for the same. That after such sale, the transcript of amount, &c., was entered upon the book from which the diagrams were taken. Has no distinct recollection as to the tract of land in question, but speaks from his knowledge of the manner business was done in the office while he was Auditor, and from his opinion as to the manner it was done in 1832. Believes there was, before, and during the time he was in office, no other mode of assessment than as before stated, or to charge the amount of taxes from year to year ; nothing to show rate of taxation for that year but old books ; no evidence from the diagram to show land was classed in second class, except the amount charged, of

$3 51; and but for the amount charged, should judge from the diagrams for previous years, that the tract belonged to first class.

The foregoing was all the testimony in the case.

Among other instructions, the plaintiff asked the following:

Although diagram A shows that the proper headings were not placed to this land for 1832, that fact does not prove but that it was properly listed before that time; which said instruction the Court refused to give; to which decision the plaintiff accepted.

The plaintiff also excepted to the giving of the second instruction asked for on the part of the defendants, to wit, that if the jury believe from the evidence that the land in question was not listed, classed or charged for taxes for the year 1832, till after it was sold for the taxes of that year, and that the amount of the sale was put down opposite the tract of land, as the amount of taxes due upon it, and is the only listing or classification that was ever made of said land for that year, they will find for the defendants.

H. W. Billings and L. B. Parsons, jr., for appellant.

J. Gillespie and George Trumbull, with whom were Williams & Lawrence, for appellees.

Opinion by Treat, C. J.:

The plaintiff read in evidence an Auditor's deed to John Dement, reciting a sale of the land in question, on the 19th of January, 1833, for the taxes due thereon for the year 1832; and then by proof connected himself with the deed. He thus made out a *prima facie* case of title.

The defendants produced a deposition of the present Auditor, for the purpose of showing that there had been no valid listing of the land for taxation. The Auditor stated that the diagram A contained all of the evidence to be found in the records and files of his office that the land was listed for the year 1832, or the four preceding years. It appears from this diagram that taxes were charged against the land in each of those years; but it fails to show any listing or classification of the land, either by the owner or the Auditor. This proof rebutted the presumption, arising from the Auditor's deed, that the land had been duly listed, and compelled the plaintiff, in order to sustain the

deed, to prove affirmatively a compliance with the requirements of the revenue laws in relation to the listing of land for taxation. Graves *vs.* Bruen, *ante*, 431.

Whether he succeeded in so doing is the chief question in the case. At his instance, the Auditor attached to his deposition the diagrams B and C. These diagrams embrace the entries made in the books of the office, relating to the land in question, from 1818 to 1827, inclusive. The most that can be claimed for them is, that the land was listed by Rufus Easton, in the first class, in the year 1819. The Auditor was of the opinion that the land was originally listed in that class, but was charged with taxes in a different class for the year 1832. The plaintiff called a former Auditor as a witness, who testified that, from the best of his recollection, after the year 1830, or 1831, all lands were charged with taxes as of the second class. He concurred in opinion with the present Auditor that the land was originally listed in the first class, but was taxed in another class in 1832.

On this state of case, the jury returned a verdict for the defendants—thereby affirming that there was no listing of the land for 1832, and no prior listing that authorized the sale of the land for the taxes charged against it for that year. In the opinion of the Court they were clearly justified in so finding. It is evident from the amount of tax charged in 1832, that the land was not then considered as belonging to the first class—the class in which it was originally listed for taxation by the owner, if at all, and in which, up to that year, it had been charged with taxes. We look in vain through the evidence for any authority in the Auditor to charge the land with taxes in the second class. If a new classification was not necessary after the passage of the act of the 1st of January, 1831—abolishing the third class— the Auditor was still bound to adhere to the former listing. A listing in one class gave him no power to charge the land with taxes in a different class. The classification is the basis of the right to charge and collect the taxes, and must be strictly pursued. It may be that a new listing was made after 1831, either by the owner or the Auditor; but if so, the proof of it should distinctly appear, and not be left to inference or conjecture.

The judgment of the Circuit Court must be affirmed, with costs.

*Judgment affirmed.*